```
                                    _____ FILED      _____ RECEIVED
                                    _____ ENTERED     _____ SERVED ON
                                           COUNSEL/PARTIES OF RECORD

                                          OCT 1 8 2011

                                    CLERK US DISTRICT COURT
                                       DISTRICT OF NEVADA
                             BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| NARVIEZ V. ALEXANDER, | ) | 3:11-cv-0217-LRH (WGC) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. | ) | |
| STATE OF NEVADA, et al., | ) | |
| Defendants. | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. # 18 and Doc. # 19.)[1] Defendants opposed (Doc. # 26, Doc. # 30) and Plaintiff replied (Doc. # 32).

After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Narviez V. Alexander (Plaintiff) was in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 7).) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) Plaintiff was recently transferred to Lovelock Correctional Center (LCC). (Doc. # 43.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) The remaining defendants are Michael Koehn, Mark Drain, Renee Baker, E.K. McDaniel, Howard Skolnik, Bruce Bannister,

---

[1] Refers to the court's docket number. Doc. # 18 and Doc. # 19 are identical.

1   Terri Jacobs, Angela Gregersen, and Greg Cox (Defendants). (*See* Doc. # 13.)

2        Plaintiff's complaint, originally filed in the Seventh Judicial District Court of the State

3   of Nevada on February 3, 2011, was removed by Defendants. (*See* Doc. # 1.) Plaintiff

4   subsequently filed his Amended Complaint. (Doc. # 7.) On screening, the court found Plaintiff

5   stated colorable claims for deliberate indifference to a serious medical need under the Eighth

6   Amendment, and due process under the Fourteenth Amendment. (*See* Doc. # 13.)

7        Plaintiff's *Eighth Amendment* claim is set forth in Count I of his Amended Complaint.

8   (Doc. # 7 at 4-8.) Plaintiff alleges that he arrived at ESP on June 9, 2010. (*Id.* at 5-6.) He

9   began to have painful symptoms in his legs, arms, back, and right side. (*Id.* at 6.) From August

10   through October 2010, Plaintiff was examined and received blood tests and antibiotic

11   medication from Dr. Martin. (*Id.*) On November 9, 2010, Plaintiff was examined by

12   Dr. Koehn, and additional blood tests were performed. (*Id.*) Plaintiff alleges that on

13   December 10, 2010, Defendant Dr. Koehn diagnosed him as positive for sickle cell trait. (*Id.*

14   at 7.) Plaintiff asserts that Dr. Koehn informed him that as a complication of having sickle cell

15   trait, he was experiencing migraines, nausea, muscle pain, abdominal pain, weakness, and

16   fatigue due to the high elevation and thin air in Ely, Nevada. (*Id.*) Dr. Koehn also told Plaintiff

17   that the only treatment option was transfer to a lower elevation facility. (*Id.*) Plaintiff

18   requested a medical transfer order to a lower elevation facility, which Dr. Koehn refused,

19   noting Plaintiff's classification points were too high for a transfer. (*Id.*) Plaintiff asserts that

20   Dr. Koehn intentionally denied him the only available treatment for his condition. (*Id.*)

21   Plaintiff also alleges that on December 14, 2010, and thereafter, he informed Defendants

22   Drain, Baker, McDaniel, Skolnik, Bannister, Jacobs, and Gregersen of his medical condition

23   and need for a transfer, but they failed to take action to have Plaintiff transferred to another

24   facility. (*Id.* at 5.)

25        Plaintiff's *due process* claim is set forth at Count II of his Amended Complaint.

26   (Doc. # 7 at 8-10.) Plaintiff alleges that Defendants Baker, Drain, Skolnik, Cox, and McDaniel

27   have arbitrarily placed him in administrative segregation indefinitely, without providing him

28                                                     2

1     proper due process protections. (*Id.*)

2         On June 24, 2011, Plaintiff filed a Motion for Temporary Restraining Order (TRO) and

3     Preliminary Injunction (Doc. # 18 and Doc. # 19), which Defendants oppose (Doc. # 26 and

4     Doc. # 30).

## II. LEGAL STANDARD

6         The purpose of a preliminary injunction or TRO is to preserve the status quo if the

7     balance of equities so heavily favors the moving party that justice requires the court to

8     intervene to secure the positions until the merits of the action are ultimately determined.

9     *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an

10     "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553

11     U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance

12     the competing claims of injury and must consider the effect on each party of the granting or

13     withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555

14     U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires

15     that the court determine whether Plaintiff has established the following: (1) he is likely to

16     succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary

17     relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public

18     interest. *Id.* at 20 (citations omitted).

19         Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for

20     issuing a preliminary injunction that allowed the movant to offset the weakness of a showing

21     on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d

22     1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the

23     continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See*

24     *Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable

25     relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when

26     the likelihood of success is very high…This Court has never rejected that formulation, and I

27     do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of

28

the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary

1   injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987,

2   998 (9th Cir.  2000). "Section 3626(a)...operates simultaneously to restrict the equity

3   jurisdiction of federal courts and to protect the bargaining power of prison administrators-no

4   longer may courts grant or approve relief that binds prison administrators to do more than

5   the constitutional minimum." *Id.* at 999.

6        The standard for issuing a TRO is identical to the standard for preliminary injunction.

7   *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th

8   Cir. 2001). Moreover, it is appropriate to treat a non-ex parte motion for a TRO and

9   preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles Alan Wright

10  & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (2d ed. 2007) ("When the opposing

11  party actually receives notice of the application for a restraining order, the procedure that is

12  followed does not differ functionally from that on an application for a preliminary injunction

13  and the proceeding is not subject to any special requirements.").

14                              **III. DISCUSSION**

15  **A. REQUESTED RELIEF**

16       As noted above, Plaintiff filed a Motion for Temporary Restraining Order and

17  Preliminary Injunction (Doc. # 18 and Doc. # 19). In the motion, Plaintiff requests that the

18  court enter an order directing that Defendants immediately: (1) remove him from the

19  segregated housing unit that is complicating his medical condition; (2) transfer him to a lower

20  elevation facility; and (3) refer Plaintiff to a specialist, unaffiliated with NDOC, to conduct

21  tests, internal scans, and treat Plaintiff's medical condition. (*See* Doc. # 18 at 2.)

22       On October 17, 2011, the court held a hearing on Plaintiff's Motion for Appointment of

23  an Expert, at State Expense, or in the Alternative, Supervised Access to an Internet Expert

24  (Doc. # 23) and his Motion to Compel (Doc. # 42). (*See* Doc. # 47 and Doc. # 48.)[2] At the

25  hearing, Plaintiff represented to the court that he had been transferred from ESP to LCC, and

26  ────────────────

27       [2]   The court denied Plaintiff's request for a court appointed expert, and ordered supplemental briefing to address his request for supervised internet research.

28                                      5

1  he is no longer in administrative segregation. (*See also* Doc. # 43, Pl.'s Notice of Change of

2  Address from ESP to LCC.) Plaintiff confirmed that this rendered his request for orders

3  removing him from segregated housing and transferring him to a lower elevation facility moot.

4  Therefore, the court need only consider Plaintiff's request for an order referring him to a

5  specialist, unaffiliated with NDOC to conduct tests and treatment. (*See* Doc. # 18 at 2.)

6      The court will now evaluate whether Plaintiff has established: (1) a likelihood of success

7  on the merits; (2) irreparable injury; (3) the balance of hardships weighs in his favor; and (4)

8  injunctive relief is in the public interest, with respect to his request for an order referring him

9  to a specialist to conduct tests and treat his medical condition.

10 **B. EIGHTH AMENDMENT DELIBERATE INDIFFERENCE[3]**

11     **1. Likelihood of Success on the Merits**

12     In order to be granted a preliminary injunction, Plaintiff must show he is likely to

13 succeed on the merits of a claim that would entitle him to the equitable remedy he seeks.

14 *Winter*, 555 U.S. at 20.

15         **a. Eighth Amendment Standard**

16     A prisoner can establish an Eighth Amendment violation arising from deficient medical

17 care if he can prove that prison officials were deliberately indifferent to a serious medical need.

18 *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the

19 examination of two elements: "the seriousness of the prisoner's medical need and the nature

20 of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

21 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997).

22 "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

23 further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citing *Estelle*,

24 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that

25 a reasonable doctor or patient would find important and worthy of comment or treatment; the

26

27    [3]    As a result of Plaintiff's transfer to LCC and removal from administrative segregation, the court
need not address the requirements for injunctive relief with respect to Plaintiff's due process claim.

28                                         6

1    presence of a medical condition that significantly affects an individual's daily activities; or the

2    existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d

3    1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken

4    and mouth was wired shut for several months demonstrated a serious medical need).

5         If the medical needs are serious, Plaintiff must show that Defendants acted with

6    deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a

7    high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate

8    indifference entails something more than medical malpractice or even gross negligence. *Id.*

9    Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*,

10   974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows

11   of and disregards an excessive risk to inmate health or safety; the official must both be aware

12   of the facts which the inference could be drawn that a substantial risk of serious harm exists,

13   and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also*

14   *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858).

15   "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they

16   deny, delay, or intentionally interfere with medical treatment" or the express orders of a

17   prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v.*

18   *Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation

19   omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate

20   that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

21        In addition, a prison physician is not deliberately indifferent to an inmate's serious

22   medical need when the physician prescribes a different method of treatment than that

23   requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in

24   diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

25   Amendment rights); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion

26   regarding the best course of medical treatment does not amount to deliberate indifference);

27   *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a

28                                              7

1   prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To

2   establish that a difference of opinion amounted to deliberate indifference, the inmate "must

3   show that the course of treatment the doctors chose was medically unacceptable under the

4   circumstances" and that the course of treatment was chosen "in conscious disregard of an

5   excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.

6   1996) (citations omitted).

### b. Summary of Argument

8        Plaintiff argues he is likely to succeed on the merits of his Eighth Amendment claim.

9   (Doc. # 18 at 6-11.) First, he asserts he has a serious medical need, the sickle cell trait, which,

10  when coupled with the high elevation of ESP, and his confinement in segregated housing

11  without direct access to fresh air, could lead to complications including "splenic sequestration,

12  'pain crisis,' and, rarely, sudden death." (*Id.* at 7.) Second, he maintains that Defendants knew

13  of and disregarded the potential risk to Plaintiff's health. (*Id.* at 9-11.) Specifically, he claims

14  Defendants knew he was experiencing migraines, nausea, muscle pain, abdominal pain,

15  weakness and fatigue, as a result of his sickle cell trait and ESP's elevation, yet denied him

16  transfer, referral to a specialist, and appropriate treatment. (*Id.* at 10.)

17       Defendants argue that Plaintiff does not suffer from sickle cell *anemia*, but merely

18  possesses the sickle cell *trait*, and all medical information gathered from Plaintiff to date

19  establishes that his blood oxygen levels are healthy, indicating his housing at ESP did not

20  adversely affect his health. (Doc. # 26 at 3.) Defendants submitted the Declaration of

21  Dr. Koehn to establish Plaintiff merely presents a difference of opinion with respect to his

22  treatment. (*Id.*) Dr. Koehn also concludes there is no medical reason warranting a transfer

23  at this time, an issue which has been rendered moot by reason of Plaintiff's transfer to LCC.

24  (*Id.*)

### c. Plaintiff's Treatment

26       Dr. Koehn examined Plaintiff on November 9, 2010, regarding complaints of a cough

27  and tightness in his chest. (Doc. # 26-1 at ¶ 4, Ex. A-1.) Plaintiff also complained of pain in his

28

arms and legs when not exercising, despite being physically fit. (*Id.*) On December 10, 2010, Dr. Koehn examined Plaintiff again and discussed his blood test results, and his view that Plaintiff had sickle cell trait, which could be responsible for the cramping and fatigue symptoms. (*Id.*) He noted there were no treatment options other than to admit him at the infirmary and give him supplemental oxygen. (*Id.*)

Dr. Koehn examined Plaintiff again on January 2, 2011, regarding a complaint of ongoing pain in the right abdomen, and his concern he suffered a splenic infarction. (*Id.* at ¶ 6.) According to Dr. Koehn, a splenic infarction can occur in a patient with sickle cell trait as a result of low oxygen saturation of the blood. (*Id.*) Dr. Koehn performed an oxygen saturation evaluation which revealed Plaintiff's blood oxygen levels were within normal limits. (*Id.*) While he found nothing alarming, he nonetheless admitted Plaintiff to the infirmary to monitor his oxygen saturation and ability to exercise. (*Id.*)

According to the medical progress notes, Plaintiff was seen by Nurse Practitioner Martin on January 8, 2011, regarding complaints of abdominal pain. (Doc. # 26-1 at ¶ 7.) Plaintiff expressed his belief he might be suffering from splenic infarction. (*Id.*) Plaintiff requested to see a specialist and transfer to a lower elevation. (*Id.*) Nurse Practitioner Martin referred Plaintiff to Dr. Mar. (*Id.*) His vital signs and oxygen saturation were monitored for two days, and no findings of concern were identified. (*Id.* at ¶ 8.)

Plaintiff was seen by Dr. Mar on January 11, 2011. (Doc. # 26-1 at ¶ 10.) He found Plaintiff's examination results to be normal and that Plaintiff's sickle cell trait presented no health problems so there was no medical reason to warrant transfer to another institution. (*Id.*) Progress notes indicate Plaintiff was given pulse oximetry testing over a period of two months, a method of measuring the oxygenation of hemoglobin via a sensor, and Plaintiff's oxygen saturation was found to be within normal limits. (*Id.* at ¶ 11.) His oxygen saturation level was measured again on January 16, 2011, and was within normal limits. (*Id.*) According to Dr. Koehn, Plaintiff's concern of suffering splenic infarction is unfounded because while common in persons who have sickle cell anemia, splenic infarction is "vanishingly rare" in

1   patients with sickle-cell trait. (*Id.* at ¶ 13.) Dr. Koehn concludes Plaintiff's housing at ESP

2   does not create any adverse consequences to his sickle cell trait, and a transfer is not

3   warranted. (*Id.*)

4   **d. Analysis**

5   First, Plaintiff must establish he has a serious medical need. While it is undisputed that

6   Plaintiff has the sickle cell trait, Defendants dispute whether this has manifested a physical

7   condition that rises to the level of a serious medical need. For purposes of resolving this

8   motion, the court will not have to make the determination and will assume arguendo he does.

9   Accordingly, assuming, without deciding, that Plaintiff suffers from a sufficiently serious

10  medical need, at best, Plaintiff has presented a difference of opinion regarding the course of

11  treatment chosen by ESP medical personnel and the course of treatment he believes should

12  be taken. As set forth above, in order to establish that a difference of opinion amounts to

13  deliberate indifference, the inmate "must show that the course of treatment the doctors chose

14  was medically unacceptable under the circumstances" and was chosen "in conscious disregard

15  of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th

16  Cir. 1996) (citations omitted). There is simply no evidence at this juncture that the course of

17  treatment chosen by Plaintiff's health care professionals was "medically unacceptable under

18  the circumstances" or that it was "in conscious disregard of an excessive risk to his health."

19  Instead, the evidence before the court shows that Plaintiff's condition was adequately

20  monitored through oxygen saturation evaluation, which has consistently revealed that

21  Plaintiff's blood oxygen levels are within normal limits, contradicting Plaintiff's belief that

22  being housed at ESP has adversely affected his health. (*See* Doc. # 26 Ex. A, Ex. A-1.)

23  Therefore, Plaintiff has failed to demonstrate a likelihood of success on the merits.

24  **2. Irreparable Injury**

25  Plaintiff must demonstrate that irreparable injury is likely in the absence of an

26  injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to

27  prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

28

1    Plaintiff argues that in his current housing assignment, he is subject to a number of

2    potential health risks, as well as possible sudden death. (Doc. # 18 at 13.) Specifically, he

3    asserts that if he remains at ESP, his red blood cells will sickle, stick together, clot, and cause

4    him to experience a pain crisis, or worse. (*Id*.) He also claims that the conditions at ESP can

5    accelerate dehydration, and increase his inability to breathe. (*Id*.) His affidavit states that he

6    has been in incredible pain since arriving at ESP. (Doc. # 18 at 21.) In addition to seeking

7    transfer from ESP (which has since occurred), Plaintiff seeks appointment of and consultation

8    with a medical specialist in this field.

9    While Plaintiff speculates that he may suffer from various infirmities, and possibly

10   death, if he is not transferred from ESP, there is no evidence to support Plaintiff's conclusions.

11   Instead, the medical evidence suggests that Plaintiff's blood oxygen levels have been

12   monitored and have consistently been within normal limits. In addition, while Plaintiff claims

13   that the conditions at ESP *can* accelerate dehydration and increase his inability to breathe,

14   there is no evidence that he in fact experienced either of these conditions. Plaintiff makes a

15   generalized statement that he has been in pain since arriving at ESP, but the record does not

16   necessarily demonstrate a link between any pain he may be experiencing and his sickle cell

17   trait.

18   Based on the evidence before the court, Plaintiff has not demonstrated he will suffer

19   immediate irreparable injury if he is not referred to a specialist. Plaintiff received frequent

20   medical treatment and blood oxygen monitoring at ESP. The most recent monitoring results

21   suggest there is no adverse effect on his health. Therefore, the court finds Plaintiff fails to

22   show he is likely to suffer irreparable injury in the absence of injunctive relief because there

23   is no evidence of deliberate indifference to Plaintiff's medical condition.

24   ### 3. Balance of Hardships

25   A party seeking injunctive relief "must establish...that the balance of equities tips in his

26   favor." *Winter*, 555 U.S. at 20.

27   Plaintiff asserts that his suffering and potential death outweigh any financial

28

11

1  complaints made by Defendants. (Doc. # 18 at 14.)

2      As stated above, there is no evidence that Plaintiff's is exposed to an unreasonable risk

3  to his health. On the other hand, if an injunction were to issue, referring Plaintiff to a specialist

4  would result in Defendants assuming additional financial costs. Accordingly, the court finds

5  that the balance of hardships in this case favors Defendants.

6      **4. Public Interest**

7      "In exercising their sound discretion, courts of equity should pay particular regard for

8  the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555

9  U.S. at 24 (quotation marks and citation omitted).

10      Plaintiff maintains that it is always in the public interest for prison officials to obey the

11  law. (Doc. # 18 at 14.)

12      While the public has an interest in seeing that Plaintiff receives adequate medical care,

13  there is no evidence presently before the court to suggest that Plaintiff is receiving anything

14  other than satisfactory care. Moreover, the public interest would not be served by the

15  expenditure of state funds for referral to a specialist for treatment of uncertain value. Plaintiff

16  has not convinced the court that injunctive relief is in the public interest.

17      **5. Conclusion**

18      The prerequisites for injunctive relief not having been met, Plaintiff's request for a

19  temporary restraining order and preliminary injunction should be denied with respect to his

20  Eighth Amendment claim.

21               **IV. RECOMMENDATION**

22      **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order that

23  Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #18 and

24  Doc. #19) be **DENIED**.

25      The parties should be aware of the following:

26      1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

27  Local Rules of Practice, specific written objections to this Report and Recommendation within

28

fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: October 18, 2011

_Watter L. Cole_

UNITED STATES MAGISTRATE JUDGE